# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

JONATHAN MONSANTO-BERRIO,

     Petitioner,

v.                                                    Case No. 8:16-cv-2244-T-02CPT

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,

     Respondent.

_____/

## <u>ORDER</u>

On August 4, 2016, the Court received Petitioner Monsanto-Berrio's petition under 28 U.S.C. § 2254 for writ of habeas corpus by a person in state custody. Dkt. 1. He seeks relief from a 2007 Florida state court conviction. *Id.* at 1. Respondents have filed a response in opposition, Dkt. 11, and Petitioner has filed a reply, Dkt. 18. The Court finds that no hearing is necessary and DENIES the petition.

## BACKGROUND

Following trial, on November 2, 2007 a jury found Petitioner guilty of robbery and first-degree murder. Dkt. 20 Ex. 2-3.[1] He was sentenced to life in

---

[1] Because Respondent filed the state court record as an appendix in paper form, Dkt. 20, the Court is unable to cite with CM/ECF pagination. The Court cites to the exhibits as provided by Respondent and uses the internal pagination where available, including the trial transcript.

prison. *Id.* Ex. 3. On December 15, 2008, the Second District Court of Appeal of Florida (Second DCA) issued its Mandate, affirming Petitioner's conviction and sentence. *Id.* Ex. 7-8.

As framed by Petitioner, the State's case against him "centered on the theory that Petitioner shot and killed Antonio Burks during a botched robbery." Dkt. 1 at 5. At the time of the shooting, Burks was sitting in the driver's seat of his car, a Chevrolet Impala, with his girlfriend, Shauntay Johnson, in the passenger seat. Dkt. 1 at 16. They met with Feras Bataineh inside the vehicle to ostensibly negotiate a drug deal. *Id.* Two men entered the rear of the vehicle whereupon guns were drawn, words exchanged, and one or both of the two men shot Burks. *Id.*

Following the case investigation, Petitioner, Christopher Irizarry, and Feras Bataineh were charged with killing Burks. Johnson testified at trial that Petitioner shot Burks first, then Irizarry shot. She identified Petitioner as the shooter to the jury. She testified Burks was being robbed by Petitioner at a drug sale and was shot by Petitioner in the head at point blank range. Dkt. 20 Ex. 46 at 385-99, 405, 442. At trial, another individual, Fabian Moreno, testified that he, Bataineh, and an unknown individual had entered the Impala. *Id.* at 1186-88. It was the State's theory that Moreno was instead the driver for Irizarry and Petitioner. Another witness, Jesse Hollister, testified that Petitioner was with her at Jason Ryder's

apartment at the time of the shooting. Dkt. 18 at 8-9; Dkt. 20 Ex. 46 at 1228-29.

Petitioner did not testify and has maintained that he did not shoot Burks.

Petitioner raises nine grounds for relief premised on ineffective assistance of

trial counsel: (1) counsel failed to investigate, interview, and call co-defendant

Irizarry to testify at trial; (2) counsel did not elicit evidence that Irizarry had

confessed to shooting Burks; (3) counsel did not move to suppress Petitioner's

statements concerning a fabricated alibi; (4) counsel failed to move to suppress

other statements and telephone records that resulted from the statements; (5)

counsel failed to investigate the distance between the location of the offense and

the cell site towers presented by the government; (6) counsel failed to locate,

depose, and call key witnesses in support of Petitioner's defense; (7) counsel failed

to request a limiting instruction on the use of impeachment evidence and failed to

object to the state's misuse of the evidence; (8) counsel failed to object to the

principal theory jury instruction which was misleading or confusing; and (9) the

cumulative effect of the above deficiencies. Dkt. 1 at 5-13. Petitioner also raises as

his tenth ground for relief a confrontation clause argument for the introduction of

co-defendant Bataineh's hearsay statement. Dkt. 1 at 22.

Petitioner filed in state court a motion for postconviction relief along with a

series of amended motions raising the first four grounds. Dkt. 20 Ex. 16. The

postconviction court denied the motions. *Id.* Ex. 18. Petitioner's motion for

rehearing was denied, *id.* Ex. 20, and the Second DCA per curiam affirmed the judgment, *id.* Ex. 25.

While that appeal was pending, Petitioner filed a second 3.850 motion arguing for relief based on newly discovered evidence, namely affidavits from individuals who would testify that Irizarry shot Burks. *Id.* Ex. 27. The court found that motion untimely and successive, and that the newly discovered evidence exception was inapplicable. *Id.* Ex. 28. A motion for rehearing was denied, *id.* Ex. 30, and the Second DCA per curiam affirmed, *id.* Ex. 34. He then appealed judgment on a motion to correct illegal sentence and motion for leave to amend motion to correct illegal sentence, *id.* Ex. 38, that was also per curiam affirmed, *id.* Ex. 42.

Respondent acknowledges that the petition is timely. Dkt. 11 at 4. Respondent instead argues that counsel was not ineffective in grounds 1-4, that grounds 5-9 are not exhausted, and that the hearsay in Plaintiff's tenth ground was properly admitted. Dkt. 11. The Court finds that a hearing is unnecessary, *see Turner v. Crosby*, 339 F.3d 1247, 1274-75 (11th Cir. 2003), and will handle the claims in turn.

## DISCUSSION

This petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254. AEDPA "establishes a highly

deferential standard for reviewing state court judgments." *Parker v. Sec'y for Dep't of Corr.*, 331 F.3d 764, 768 (11th Cir. 2003) (citation omitted). Relief from a state court conviction is unavailable for a claim "'that was adjudicated on the merits in the State court proceedings' unless the state court's decision was '(1) . . . contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or (2) . . . based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Nejad v. Attorney Gen., State of Ga.*, 830 F.3d 1280, 1288 (11th Cir. 2016) (quoting 28 U.S.C. § 2254(d)).

"Clearly established Federal law" means holdings of the U.S. Supreme Court "as of the time of the relevant state-court decision." *Id.* at 1288-89 (citation omitted). "Contrary to" requires a state court conclusion "opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Id.* at 1289 (citations omitted) (alterations in original). The "unreasonable application" clause applies only "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* (citation omitted) (alterations in original).

A state court's factual determination, meanwhile, "is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Id.* (citation omitted). AEDPA "requires federal habeas courts to presume the correctness of state courts' factual findings unless applicants rebut this presumption with 'clear and convincing evidence.'" *Id.* (citation omitted). This is a "demanding but not insatiable standard, requiring proof that a claim is highly probable." *Id.* (citation and internal quotation marks omitted).

INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS

Turning first to Petitioner's ineffective assistance of counsel claims, counsel is ineffective under the Sixth Amendment if "(1) counsel's performance was deficient; and (2) the deficient performance prejudiced the defense such that petitioner was deprived of a fair trial." *Dill v. Allen*, 488 F.3d 1344, 1354 (11th Cir. 2007) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). But in the habeas context, "[t]he question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Knowles v. Mirzayance,* 556 U.S. 111, 123 (2009) (citation and internal quotation marks omitted). "If there is 'any reasonable argument that counsel satisfied *Strickland*'s deferential standard,' then a federal court may not disturb a state-court decision denying the claim." *Hittson v. GDCP Warden*, 759 F.3d 1210, 1248 (11th

Cir. 2014) (citation omitted). Here, Petitioner fails to establish that the postconviction court's determination under *Strickland* was unreasonable.

Ground I.   <u>Failure to Call Irizarry to Testify at Trial</u>

According to Petitioner, trial counsel did not investigate, interview, or call Irizarry to testify, even though Irizarry claimed he was the one who shot Burks. Dkt. 1 at 5. This was over Petitioner's suggestion that counsel speak to Irizarry. *Id.* Counsel purportedly responded that, if called to testify, Irizarry would just "plead the Fifth." *Id.*

Petitioner has provided an unnotarized affidavit from Irizarry in which Irizarry states that if he had been called to testify, "I would have waived my Fifth Amendment privilege in my then pending case, and I would have testified to the following: [Petitioner] is innocent of the crimes for which he was accused. In fact, . . . I was the person who, in self-defense, shot Antonio Burks from the backseat of his Chevy Impala. [Petitioner] was not in said vehicle, nor did he have any involvement in the incident whatsoever." Dkt. 1-1 at 2. Petitioner has attached additional affidavits from other individuals suggesting the same (the very affidavits presented to the postconviction court), and a waiver of attorney/client confidential communication from Irizarry. Dkt. 1-1 at 4-9.

In his reply, Petitioner argues that, more than just fail to call Irizarry as a witness, counsel failed to investigate at all. Dkt. 18 at 3. Petitioner also states that

he wanted counsel to investigate Irizarry before trial and, due at least in part to this, Petitioner filed a letter to dismiss his court appointed counsel with the trial court. *Id.* at 7.[2]

The postconviction court held an evidentiary hearing at which trial counsel testified that because Irizarry's criminal case was not yet resolved and Irizarry was represented by counsel, Petitioner's counsel could not communicate or interview Irizarry. Dkt. 20 Ex. 18 at 250. Irizarry's counsel also testified he would not allow Irizarry to testify if called as a witness in Petitioner's case. *Id.* The court concluded that "there is not a reasonable probability Irizarry would have been an 'available' witness for Defendant. As such, the Court finds that counsel cannot be deemed deficient as alleged." *Id.* at 251. The court further found that there was no reasonable probability that Irizarry's testimony would have affected the outcome of the trial because Petitioner "stated in his Motion that Irizarry would have testified that he had killed the victim, but Irizarry did not testify to such—and, after observing Irizarry's demeanor in court and hearing his testimony, this Court does not find Irizarry to be a credible witness." *Id.*

The Court cannot find that the postconviction court's application of *Strickland* was unreasonable. Irizarry's affidavit stating that he would have

---

[2] On June 25, 2007, the court conducted a pre-trial *Nelson* hearing at which it determined that Defendant's trial counsel was providing effective assistance. Dkt. 18-6; *see Nelson v. State,* 274 So.2d 256 (Fla. 4th DCA 1973). In reaching this decision, the court addressed many of the points that Petitioner continues to raise.

testified if asked is of no import because Petitioner's trial counsel was unaware of this at the time of trial. Indeed, the postconviction court credited counsel's testimony that he would be unable to communicate with Irizarry because Irizarry was represented. Further, Irizarry's counsel confirmed that he would not have "allowed" Irizarry to testify.

Though Irizarry could have testified over the advice of counsel, it was still not unreasonable for the state court to find Petitioner's counsel's performance not deficient for not calling Irizarry. *See Dumas v. Long*, EDCV 14-328 MMM(JC), 2015 WL 4720583, at *6 (C.D. Cal. June 5, 2015), *report and recommendation adopted*, 2015 WL 4722216 (C.D. Cal. Aug. 6, 2015) ("It is within the ambit of reasonable professional judgment for trial counsel to refrain from calling a witness whom counsel reasonably assumes will invoke his or her Fifth Amendment privilege."); *Steinbruegge v. Dormire*, 4:09CV1210MLM, 2010 WL 2560079, at *17 (E.D. Mo. June 23, 2010) (finding ground without merit where state appellate court observed "it would be unreasonable to assume that [other individuals involved in the offense] would be willing to waive their Fifth Amendment rights"); *United States v. Harden*, 846 F.2d 1229, 1231-32 (9th Cir. 1988) (trial counsel not ineffective for failing to call witness who had pleaded guilty and was awaiting sentencing).

The postconviction court was not unreasonable in also finding no prejudice because of Irizarry's lack of credibility as a witness. Apart from issues with his demeanor that are best left to the postconviction court's judgment, the prosecution could have impeached Irizarry through his many inconsistent statements made to law enforcement, including one in which he implied that Petitioner was the shooter and that he was afraid of Petitioner. Also damaging to Irizarry's credibility and Petitioner's case would have been Irizarry's reluctance to identify the third individual in the backseat of the Impala. Indeed, the affidavit before the postconviction court and this Court merely stated that the three individuals in the backseat of the Impala were Irizarry, Bataineh, and "a third person whom I'm not at liberty to implicate at the present time – seated behind the victim." Dkt. 20 Ex. 19 at 507.

In evaluating prejudice, the evidence against Petitioner is also relevant. That evidence included: Johnson's eyewitness identification of Petitioner; testimony from Jennifer Locke placing him at the scene; additional evidence of a third individual in the backseat of the Impala; connections between Petitioner and Moreno and Irizarry; cell site location information placing him near the shooting; a series of calls made from his phone around the time of the shooting; two firearms suspected in the shooting and clothes with blood found in Petitioner's residence; Petitioner's fabricated alibi; and Petitioner's admission of his involvement in the

robbery and shooting to David Reyna, a fellow inmate in jail. The jury, of course, was free to reject Petitioner's alibi defense and Moreno's testimony.

Lastly, it is worth noting the arguments presented to the postconviction court concerned more than just counsel's failure to call Irizarry to testify; they also addressed failure to investigate. *See also Wiggins v. Smith*, 539 U.S. 510, 521-22 (2003) ("[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments."). Habeas relief is unavailable on Petitioner's first ground.

Ground II.    Failure to Elicit Evidence about the Confession

Petitioner next claims that, in addition to calling Irizarry to testify, counsel should have elicited evidence about Irizarry's confession during the cross-examination of Detective Charles Massucci. Dkt. 1 at 7. Petitioner argues that the content of the confession would have been admissible hearsay as statements against penal interest. *Id.* at 7-8. In his reply, Petitioner reiterates that the determination Irizarry was unavailable was unreasonable and that Irizarry's testimony would have affected the outcome of the trial. Dkt. 18 at 4-5.

At the evidentiary hearing, trial counsel testified he could not have elicited Irizarry's statements as they would have been inadmissible hearsay. Dkt. 20 Ex. 18 at 252. He further testified that the statements were damaging to Petitioner, which, the court found, was supported by Detective Massucci's testimony at the hearing. Indeed, Massucci testified at the hearing that Irizarry ultimately implicated Petitioner and did not do so earlier out of fear. *Id.* The postconviction court credited this testimony in finding no deficient performance or reasonable probability of a different outcome.

In Florida, "[a] statement tending to expose the declarant to criminal liability and offered to exculpate the accused is inadmissible, unless corroborating circumstances show the trustworthiness of the statement." Fla. Stat. § 90.804(2)(c); *see also Chambers v. Mississippi*, 410 U.S. 284, 300-01 (1973). A confession to a shooting certainly would expose the declarant to criminal liability, and Petitioner does list circumstances that could corroborate Irizarry's involvement in the shooting. Dkt. 1 at 7.

But, as Respondent points out, if trial counsel had elicited Irizarry's confession, the prosecution would have sought to introduce later statements that were incriminating to Petitioner. Dkt. 11 at 16. In those statements, Irizarry claims that he was not the shooter and that Petitioner was involved in the robbery and shooting; Irizarry also expresses his own fears about Petitioner. *E.g.*, Dkt. 18-7 at

8-12, 16, 18; *see also* Dkt. 20 Ex. 19 at 501. The Court cannot ultimately determine that the postconviction court's findings on deficient performance or prejudice were unreasonable.

Ground III.   Failure to Move to Suppress Fabricated Alibi

Trial counsel did not move to suppress pre-*Miranda* statements Petitioner made in a holding cell concerning a possible alibi. Dkt. 1 at 9. Because Petitioner later contradicted the alibi, the statements were incriminating and were presented at trial. *Id.* at 9-10. The postconviction court credited the testimony of trial counsel that there was no basis for suppression of the statements, and they were nonetheless not incriminating. Dkt. 20 Ex. 18 at 253. The postconviction court found neither deficient performance nor prejudice under *Strickland*. *Id.*

Though it is unclear why trial counsel found no basis for suppression,[3] it is clear that the incriminating nature of the statements comes not from their substance but because they were later contradicted. The argument is that this inconsistency undermined Defendant's alibi defense at trial. Yet Petitioner does not direct the Court to evidence on the record that, at the time a motion to suppress would have

---

[3] It may be relevant that, while in the holding cell, Petitioner was "yelling and screaming for assistance," Dkt. 20 Ex. 18 at 392. Detective Duran "approached him and tried to call him down, just asked him what the problem was and tried to calm him down. . . . Got engaged in conversation, you know, he was very upset, he was yelling." *Id.* Ex. 46 at 672. Duran then said "I'll be glad to help you out. Just tell me, you know, who can vouch for your whereabouts." *Id.* at 673. Additionally, during the later evidentiary hearing, trial counsel did wonder "what would be [the] theory . . . for moving to suppress [Petitioner's] statements when he's properly given the *Miranda* warnings?" *Id.* Ex. 18 at 409. Yet the postconviction court seemed to analyze Petitioner's claim as though *Miranda* was not provided prior to these statements. *Id.* at 253.

been available, trial counsel was aware that the prosecution could impeach

Petitioner with the seemingly exculpatory statements. In any event, the

postconviction court was not unreasonable in finding no prejudice because at trial

the jury heard sufficient evidence to contradict Petitioner's alibi and establish guilt.

Ground IV.  Failure to Move to Suppress Statements and Telephone Records After
            Defective Miranda Warning

Petitioner also argues that the eventual *Miranda* warning was deficient

because the detective did not advise Petitioner of his right to consult with an

attorney either before interrogation or to have an attorney present during an

interrogation. Dkt. 1 at 11. During a subsequent interrogation, Petitioner made

statements that led law enforcement to incriminating phone records used against

him at trial. *Id.* Specifically, the government introduced evidence that Petitioner

was within a two-mile radius of where the crime occurred at the time of the

shooting, thereby discrediting his alibi witness at trial. *Id.* at 12.

The *Miranda* warning in question stated:

> You do have the right to remain silent and anything can and
> will be said against you in a court of law. You do have the right
> to an attorney. And if you can't afford an attorney, one will be
> appointed at no cost. What's most important to understand, if
> you do choose to talk to us at this point, at any point after this
> you can feel free to ask for a lawyer or you can feel free – or
> invoke your right to remain silent.

*Id.* at 11. Trial counsel testified that the warning was proper and, again, nothing

stated in the interrogation was apparently incriminating as Petitioner "maintain[ed]

his innocence throughout the entirety of the interview." Dkt. 20 Ex. 18 at 392. The

Court credited the testimony and found no deficient performance. *Id.* at 255.

Indeed, the Supreme Court upheld a similar *Miranda* warning in *Fla. v.*

*Powell*, 559 U.S. 50, 54 (2010):

> "You have the right to remain silent. If you give up the right to
> remain silent, anything you say can be used against you in
> court. You have the right to talk to a lawyer before answering
> any of our questions. If you cannot afford to hire a lawyer, one
> will be appointed for you without cost and before any
> questioning. You have the right to use any of these rights at any
> time you want during this interview."

The question there, as here, was whether the language adequately informed the

suspect of his right to have a lawyer present during the interview. The Court found

that "two warnings reasonably conveyed" this right: "the right to talk to a lawyer

before answering any . . . questions"; and "the right to use any of [his] rights at any

time [he] want[ed] during th[e] interview." *Id.* at 62.

Law enforcement here arguably combined both notions into one when it

stated, "What's most important to understand, if you do choose to talk to us at this

point, at any point after this you can feel free to ask for a lawyer." It was

reasonable for trial counsel to find that this statement suggested that, if Petitioner

submitted to questioning, he was able to have a lawyer present and therefore a

motion to suppress would be unavailing—or at the very least, it was not

unreasonable for the postconviction court to so find.

It seems the court did not address the prejudice prong as it relates to this ground. Dkt. 20 Ex. 18 at 255. In the absence of a state court ruling, review is de novo. *Ferrell v. Hall*, 640 F.3d 1199, 1226 (11th Cir. 2011) (citations omitted). The question is, then, whether "but for counsel's unprofessional performance, there is a reasonable probability the result of the proceeding would have been different." *Id.* at 1234 (citation omitted). Petitioner is unable to demonstrate prejudice because, apart from the phone records, the jury was presented with ample evidence to establish that he was at the scene of the shooting. Habeas relief is unwarranted.

<u>PETITIONER'S PROCEDURALLY DEFAULTED CLAIMS</u>

Turning next to grounds five through nine, in order for Petitioner to avoid default of federal claims, (1) "the applicant must have fairly apprised the highest court of his state with the appropriate jurisdiction of the federal rights which allegedly were violated, and (2) the applicant must have presented his claims in state court in a procedurally correct manner." *Upshaw v Singletary,* 70 F. 3d 576, 578-579 (11th Cir. 1995). Petitioner admits that he did not raise these ineffective assistance of counsel grounds in his 3.850 motion.

Because at this stage Petitioner is unable to present his claims to the state court, the grounds are procedurally defaulted. *See, e.g.*, *Crosby v. Crosby,* No. 502cv129OC10GRJ, 2005 WL 1126563, at * 2 n.15 (M.D. Fla. May 5, 2005) (citing *Tafero v. State,* 561 So.2d 557 (Fla. 1990) for proposition that "additional

claims of ineffective assistance of counsel cannot be raised in a successive motion for post-conviction relief where ineffectiveness was raised and addressed in the first motion"); *Allen v. Sec'y, DOC*, No. 2:12-CV-644-FTM-29CM, 2016 WL 762648, at \*5 (M.D. Fla. Feb. 24, 2016), *aff'd*, No. 17-11828, 2019 WL 1483791 (11th Cir. Apr. 3, 2019) ("Petitioner cannot return to state court to present this claim because Florida procedural rules preclude a second, untimely Rule 3.850 motion absent certain extenuating circumstances that are not present in this case."); *see also Frazier v. State,* 898 So.2d 1183, 1183-84 (Fla. 3d DCA 2005) (barring as successive claims that could have and should have been made in previous post-conviction motion).

"[A] state prisoner seeking federal habeas corpus relief, who fails to raise his federal constitution claim in state court, or who attempts to raise it in a manner not permitted by state procedural rules, is barred from pursuing the same claim in federal court absent a showing of cause for and actual prejudice from the default." *Alderman v. Zant*, 22 F. 3d 1541, 1549 (11th Cir. 1994) (citation omitted). "Cause exists if there was 'some objective factor external to the defense [that] impeded counsel's efforts to comply with the State's procedural rule.'" *Mize v. Hall,* 532 F.3d 1184, 1190 (11th Cir. 2008) (citation omitted). It is not enough that a prisoner is pro se. *Harmon v Barton*, 894 F. 2d 1268, 1274 (11th Cir. 1990).

Actual prejudice requires that the error "worked to [Petitioner's] *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982). Petitioner must show that there is at least a reasonable probability that the result of the proceeding would have been different. *Henderson v. Campbell*, 353 F.3d 880, 892 (11th Cir. 2003).

Though Petitioner acknowledges the below claims were not raised in state court proceedings, Petitioner contends he is entitled to review under *Martinez v. Ryan*, 566 U.S. 1 (2012). Dkt. 18 at 2. Rather than address the merits of Petitioner's claims, Respondent reiterates that the claims are not exhausted and *Martinez v. Ryan* is inapplicable. Dkt. 11 at 26-30.

"Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective." *Martinez*, 566 U.S. at 17-18. This exception applies "only where: (1) a state requires a prisoner to raise ineffective-trial-counsel claims at the initial-review stage of a state collateral proceeding and precludes those claims on direct appeal; (2) the prisoner did not comply with state rules and failed properly to raise ineffective-trial-counsel claims

in his state initial-review collateral proceeding; (3) the prisoner had no counsel (or his appointed counsel was ineffective by not raising ineffective-trial-counsel claims) in the initial-review collateral proceeding; and (4) failing to excuse the prisoner's procedural default would cause the prisoner to lose a 'substantial' ineffective-trial-counsel claim." *Arthur v. Thomas*, 739 F.3d 611, 629 (11th Cir. 2014). "A defaulted claim is substantial if the resolution of its merits would be debatable among jurists of reason." *Duffy v. Sec'y, Dep't of Corr.*, 729 F. App'x 669, 670 (11th Cir. 2018) (citation omitted).

Petitioner's Rule 3.850 motion was filed pro so, though he did seem to have the benefit of counsel at the subsequent evidentiary hearing. Dkt. 20 Ex. 18. Petitioner also stated in various filings that he was "represented" during postconviction proceedings. *E.g.*, Dkt. 20 Ex. 27 at 3. And although a defendant cannot typically raise ineffective-assistance-of-trial-counsel claims on direct appeal in Florida, *Rigg v. Warden, Blackwater River Corr. Facility*, 685 F. App'x 812, 815-16 (11th Cir. 2017) (citing *Reynolds v. State*, 99 So.3d 459, 474 (Fla. 2012)); *Ellerbee v. State,* 87 So.3d 730, 739 (Fla. 2012), Petitioner did raise a number of ineffective assistance of counsel claims in his state initial-review collateral proceeding.

Petitioner thus seems to contend that he did not raise all possible claims, but there is no indication on the record that "not excusing the procedural default would

cause the prisoner to lose a 'substantial' ineffective-trial-counsel claim." *Arthur*, 739 F.3d at 629. In sum, the Court finds that Petitioner has not established cause or prejudice, or that a substantial claim under *Martinez* is available, for the following grounds.[4]

Ground V.   Failure to Investigate the Distance Between the Offense Location and the Cell Site Towers

At trial, the government argued that evidence demonstrated Petitioner's cell phone was used within a two-mile radius of the location of the offense. Dkt. 1 at 16. Evidence showed (1) the "average" radius between a cell site tower and the person making a call would only be one-and-a-half to two miles, and (2) during the time of the offense, Petitioner received or placed seven calls from one of four cell towers, each of which were within a two-mile radius of the location of the offense. *Id.* at 17. Yet Petitioner now proffers that one of the towers, T2021, was actually

---

[4] Petitioner may also obtain federal habeas review of a procedurally defaulted claim, without a showing of cause or prejudice, if review is necessary to correct a fundamental miscarriage of justice. *Henderson*, 353 F.3d at 892. This occurs where "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup v. Delo*, 513 U.S. 298, 327 (1995). This exception requires a petitioner's "actual" innocence. *Johnson v. Ala.*, 256 F.3d 1156, 1171 (11th Cir. 2001). A petitioner must present "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 324. This new evidence must be "so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error." *McQuiggin v. Perkins*, 569 U.S. 383, 401 (2013) (citation omitted). The new evidence must show "that more likely than not, in light of the new evidence, no reasonable juror would find him guilty beyond a reasonable doubt[.]" *House v. Bell*, 547 U.S. 518, 538 (2006).

Though in his petition Petitioner does not expressly raise a claim of actual innocence, he asserts multiple times that he is innocent of killing Burks. *E.g.*, Dkt. 21 at 2. But, first, Petitioner has not clearly established any constitutional errors. Secondly, as mentioned above, the jury was presented with substantial evidence of Petitioner's involvement in the robbery. What is more, the state courts have rejected all the purportedly exculpatory evidence Petitioner set forth post-trial, most importantly Irizarry's affidavit. Petitioner cannot establish actual innocence on these facts.

3.6 miles from the location. *Id.* According to Petitioner, this means he was no less than 1.6 to 5.6 outside the radius of where the shooting occurred. *Id.*

This argument suffers a multitude of defects. First, as Petitioner makes clear in his subsequent motion to conduct discovery, these distances were obtained "through www.Google.com via Sylvia Romero." Dkt. 21 at 2. Not only is Romero's methodology for this specious discovery not provided, but she has also not provided an affidavit about the truth of the statement. Secondly, the trial testimony was only that the *average* radius was between one-and-a-half to two miles, not that greater distances were impossible or even unlikely. Dkt. 20 Ex. 46 at 617, 1033. Indeed, the jury heard testimony that a cellphone will use the closest available cell tower that has room, *id.* at 617, and there is the possibility of anomalies and being "bumped" to further cell towers, *id.* at 1033. There is no evidence it is impossible for the closest available tower that can sustain a call to be 3.6 miles away. Additionally, perhaps a reasonable jury could have found that Petitioner was at the scene of the shooting during some of the calls but not others.[5]

Most importantly, Petitioner fails to demonstrate that trial counsel was aware of this information prior to trial, that he was deficient for failing to investigate, or

_____

[5] It is worth noting that accepting Petitioner's premise that the cell site data shows his phone was not at the shooting runs counter to evidence the defense presented at trial. Moreno testified both that he possessed Petitioner's phone that day and that he was at the shooting. Petitioner does not reconcile this inconsistency. It is even conceivable that the jury believed Moreno's testimony that he possessed Petitioner's phone, yet Petitioner was nonetheless involved in the shooting.

that the information would have made a difference. Indeed, there was additional evidence, including eyewitness testimony, placing Petitioner at the shooting. Petitioner fails to establish cause and prejudice, and this is not a substantial claim.

Ground VI.  <u>Failure to Call Possible Defense Witnesses</u>

At the time of the shooting, four individuals were sitting in a black SUV parked next to Burks's vehicle, including Locke and Thomas Martinez. Dkt. 1 at 19. Both testified and did not offer incriminating evidence linking Petitioner to being inside Burks's vehicle. *Id.* Two other individuals, Devon Church and Lindell Mitchell, were not interviewed by Petitioner's trial counsel and were not called to testify. According to Petitioner, these two would have testified that Petitioner was not one of the men who entered Burks's vehicle. Dkt. 18 at 14-16.

This ignores that Locke and Martinez were actually State witnesses who testified they saw Petitioner or someone matching his description at the scene of the shooting. Dkt. 20 Ex. 46 at 529-30, 832. Locke also testified that she saw Bataineh enter the Impala, that she was looking away, and she did not see anyone else enter the car. *Id.* at 593. Based on Petitioner's theory at trial, this was inculpatory evidence that placed him at the scene and contradicted his alibi. Testimony from Church and Mitchell would likely have, at best, done the same. Petitioner cannot have his cake and eat it, too: though testimony from on-scene

witnesses like Locke and Martinez could possibly place him outside the Impala, the same testimony would contradict the alibi.

In the same ground for relief, Petitioner also complains that counsel also should have called Jason Ryder, another alibi witness. This likely would have been duplicative of Hollister's testimony. Petitioner, moreover, does not direct the Court to any indication that trial counsel would have reason to believe the testimony of any of the above individuals would be any more exculpatory than the testimony presented, especially in light of the evidence contradicting the alibi. Petitioner cannot establish cause and prejudice, and this is not a substantial claim.

Ground VII.    Failure to Request Limiting Instruction on Impeachment Evidence and to Object to Misuse of the Evidence

Petitioner next claims that at trial the government used prior inconsistent statements to impeach Shauntay Johnson, Jennifer Locke, Fabian Moreno, and Jesse Hollister. Dkt. 1 at 20. Counsel did not request a limiting instruction. Petitioner also argues that during closing argument the government used the prior inconsistent statements as substantive evidence of guilt without objection.

A few points are worth noting. Again, Johnson and Locke were State witnesses, so presumably their prior inconsistent statements used for impeachment would harm the prosecution. Secondly, Petitioner does not direct the Court with any specificity to the prior inconsistent statements in question, and any misuse of them is not clear from the face of the record. *Walker v. Sec'y, Fla. Dep't of Corr.*,

No. 17-11814-H, 2017 WL 5069357, at *6 (11th Cir. Oct. 16, 2017) ("Because the statements were not improperly used as substantive evidence of guilt, there is a reasonable argument that counsel's performance was not deficient for failing to object."); *Fondren v. Comm'r, Ala. Dep't of Corr.*, 568 F. App'x 680, 686 (11th Cir. 2014) ("It is axiomatic that if an instruction was not warranted by the facts established at trial, then a failure to request such instruction or object to its absence cannot constitute ineffective assistance of counsel."); *see also Walker v. Jones*, No. 4:15CV234/MW/CJK, 2017 WL 1086228, at *14 (N.D. Fla. Mar. 1, 2017), *report and recommendation adopted*, 2017 WL 1075073 (N.D. Fla. Mar. 21, 2017), *certificate of appealability denied*, No. 17-11814-H, 2017 WL 5069357 (11th Cir. Oct. 16, 2017) (no error for failure to request limiting instruction where court read general instruction on prior inconsistent statements and record did not suggest jury was urged to consider statements as substantive evidence).

Furthermore, it is not clear whether any inconsistent statements taken as substantive evidence were exculpatory or inculpatory. *See United States v. Feliciano*, 761 F.3d 1202, 1211 (11th Cir. 2014) (finding no plain error where substantive evidence was exculpatory). Lastly, any prior inconsistent statements that were given under penalty of perjury at a trial, hearing, or other proceeding or in a deposition—and here it seems like there were some—are not hearsay. Fla. Stat. § 90.801(2)(a); *see also United States v. Tubbs*, 652 F. App'x 750, 756 (11th

Cir. 2016) ("Because [the witness] testified and was subject to cross-examination, her prior inconsistent testimony was actually not hearsay, and could have been taken as substantive evidence by the jury absent any limiting instruction.").

Lastly, even assuming the State did improperly use the evidence, courts have recognized strategic reasons for electing not to object, such as not drawing attention to the testimony. *See, e.g.*, *Watts v. Sec'y, Fla. Dep't of Corr.*, No. 3:14-CV-558-J-39MCR, 2017 WL 2021701, at *12 (M.D. Fla. May 12, 2017) (citations omitted). Petitioner fails to establish cause and prejudice, and this is not a substantial claim.

Ground VIII.        <u>Failure to Object to Principal Theory Jury Instruction</u>

Petitioner argues that the "principal theory" jury instruction[6] was improper because the government's theory of the case was that Petitioner fired the weapon that killed Burks, and there were no alternatives provided for commission by a co-defendant. Dkt. 1 at 21. According to Petitioner, this inappropriate instruction confused or misled the jury.

---

[6] That instruction stated:

> If the defendant helped another person or persons attempt to commit a crime, the defendant is a principal and must be treated as if he had done all of the things the other person or persons did. If the defendant had a conscious intent that the criminal act be done and the defendant did some act or said some word which was intended to and which did incite, cause, encourage, assist or advise the other person or persons who actually attempt to commit the crime. To be a principal the defendant does not have to be present when the crime is attempted.

Dkt. 20 Ex. 46 at 1342.

But it is not clear to the Court that such an instruction was in error, much less that failure to object to it constituted ineffective assistance of counsel. There is no allegation that the instruction misstated the law. Dkt. 20 Ex. 46 at 1341-42; *see also State v. Roby,* 246 So.2d 566, 571 (Fla. 1971). And the evidence was more than adequate to point to either Petitioner or Irizarry—or both—as the shooter. Under Florida law, "if evidence exists to support the principal theory, the trial court may instruct the jury on the principal theory." *Lane v. Sec'y, Dep't of Corr.*, No. 6:11-CV-1475-ORL-37DAB, 2013 WL 5969566, at *4-5 (M.D. Fla. Aug. 27, 2013) (citation omitted); *see also Thomas v. McNeil*, No. 4:07CV473/MMP/EMT, 2010 WL 3491158, at *15 (N.D. Fla. July 30, 2010), *report and recommendation adopted*, 2010 WL 3491156 (N.D. Fla. Sept. 2, 2010); *Dorn v. Singletary*, 26 F. Supp. 2d 1335, 1344 (M.D. Fla. 1998); *Lewis v. State,* 693 So.2d 1055, 1057-58 (Fla. 4th DCA 1997). Petitioner fails to establish cause and prejudice, and this is not a substantial claim.

Ground IX.        Cumulative Effect of Counsel's Deficiencies

Petitioner claims the cumulative effect of counsel's deficiencies deprived him of due process and effective assistance of counsel. Petitioner focuses on the testimony of Shauntay Johnson as "[h]er credibility was the central issue in the case." Dkt. 1 at 21-22. The postconviction court denied this claim, finding that

none of Petitioner's individual claims were merited. Dkt. 20 Ex. 46 at 256.

Petitioner raised this issue on direct appeal, which was per curiam affirmed.

Many of the claims Petitioner now brings are defaulted, and Petitioner cites no authority for the proposition that a cumulative error claim provides an avenue to bypass a procedural bar. *See Taylor v. Dunn*, No. CV 14-0439-WS-N, 2018 WL 575670, at *39 (S.D. Ala. Jan. 25, 2018), *certificate of appealability denied*, No. 18-11523-P, 2018 WL 8058904 (11th Cir. Oct. 5, 2018), *cert. denied*, 2019 WL 1083183 (U.S. May 13, 2019) (citations omitted) ("[The petitioner] may not circumvent the procedural bar by repackaging these improper claims under the heading of 'cumulative error.' If the underlying claims are procedurally barred (which they are), then the cumulative error claim based on those underlying claims likewise fails as a matter of law.").

Equally problematic for Petitioner is the claim itself: neither the Supreme Court nor the Eleventh Circuit has recognized the cumulative error doctrine for ineffective assistance of counsel. *Collins v. Buss*, No. 3:09CV117/LAC/EMT, 2011 WL 4832536, at *21 (N.D. Fla. July 18, 2011), *report and recommendation adopted*, 2011 WL 4832534 (N.D. Fla. Oct. 12, 2011), *aff'd*, 507 F. App'x 915 (11th Cir. 2013); *see also Forrest v. Fla. Dep't of Corr.,* 2009 WL 2568185, at *4 (11th Cir. Aug. 21, 2009). And, in any event, the record before this Court is devoid

of error or deficient performance, at least to such a level as to make out a claim. Habeas relief is unwarranted.

Ground X.          Failure of Trial Court to Allow Hearsay

Petitioner lastly argues that the court "impermissibly permitted the State to introduce into evidence Bataineh's statement that 'they just shot him in the head,' despite the fact that Bataineh was unavailable as a witness and was a co-defendant in this case." Dkt. 1 at 22. "They," Petitioner observes, includes and incriminates Petitioner. *Id.* Bataineh did not testify at trial.

The State elicited the statement on its direct examination of Locke. Dkt. 20 Ex. 46 at 544, 565. On trial counsel's objection, the court heard argument on the matter before ruling that "it's not a *Bruton*[7] issue. I'm ruling it's an excited utterance." *Id.* at 564. Petitioner raised this issue on direct appeal, which was per curiam affirmed.

Though *Crawford v. Washington,* 541 U.S. 36, (2004) was mentioned in argument and on appeal, *Crawford* only applies to testimonial statements. *See also Davis v. Washington*, 547 U.S. 813 (2006). The state court was not unreasonable in finding Bataineh's statement non-testimonial. *See Franklin v. State*, 965 So.2d 79, 91 (Fla. 2007) ("Most courts agree that a spontaneous statement to a friend or family member . . . is not likely to be testimonial under *Crawford*."). *Bruton*,

---

[7] *Bruton v. U.S.*, 391 U.S. 123 (1968).

meanwhile, "only applies to situations in which a non-testifying co-defendant's statement is admitted against a defendant in a joint trial." *United States v. Valdes-Fiallo*, 213 F. App'x 957, 960 (11th Cir. 2007) (citation omitted). That was not the case here. And whether the statement was admissible hearsay is a matter of state law.

The Court finds that the state court's determination was not unreasonable. Habeas relief is unavailable.

REQUEST TO AMEND PETITION

Petitioner lastly requests permission to amend his petition in light of Respondent's argument that he failed to establish prejudice. Dkt. 18 at 19. If permission is granted, Petitioner would also remove an unspecified five of the ten grounds in the petition and add an additional claim for trial counsel's failure to investigate and impeach Johnson with purported prior felonies. *Id.* at 19-20. Because any amendment would be futile, that request is denied. Here, some procedural background is useful:

Petitioner filed his petition on August 4, 2016. Dkt. 1. On September 15, 2016, the Court ordered Respondent to respond, Dkt. 4, which Respondent did on February 27, 2017, Dkt. 11. The Court denied a motion for default on March 3, 2017. Dkt. 13. Respondent then requested additional time to file a reply on March 24, 2017, Dkt. 14. The Court gave Petitioner until May 26, 2017 to file a reply,

Dkt. 15, which was later extended until June 24, 2017, Dkt. 17. Petitioner filed his reply in which he also asked for leave to amend his petition on May 15, 2017. Dkt. 18. He also asked for counsel and for leave to amend his petition pending discovery to be conducted. Dkt. 21 at 2. That request for counsel to conduct discovery was denied. Dkt. 22 at 1. The Court also denied a motion to hold the petition in abeyance while Petitioner exhausted additional claims in state court that were on appeal.[8] Dkt. 25.

Petitioner did not amend his petition as a matter of course within twenty-one days of either the petition or Respondent's response. Fed. R. Civ. P. 15(a). In the absence of Respondent's written consent, Petitioner must therefore obtain the Court's leave. *Id.*; *Mayle v. Felix*, 545 U.S. 644, 665 (2005) (Souter, J., dissenting) ("A habeas petitioner's opportunity to amend as a matter of course, without permission of the trial court, exists only before the responsive pleading is served, and even then only once.").[9]

As outlined by the Supreme Court, Rule 15(a):

---

[8] It seems that the appeal, for which Petitioner had benefit of counsel, was also per curiam affirmed. *Monsanto-Berrio v. State*, 254 So.3d 940 (Fla. 2d DCA 2018); *see also* http://onlinedocketsdca.flcourts.org/DCAResults/CaseDocket?Searchtype=Case+Number&Court=2&CaseYear=2018&CaseNumber=0436 (last accessed June 12, 2019).

[9] It is worth noting that "a *pro se* plaintiff (unlike a counseled party) does not waive his right to amend as a matter of course by seeking the court's leave to amend." *Hoke v. Lyle*, 716 F. App'x 930, 931 (11th Cir. 2018). Yet he must still amend within the specified twenty-one days. *See, e.g.*, *Baldwin v. Klee*, No. 2:16-CV-13143, 2017 WL 1160625, at *3 (E.D. Mich. Mar. 29, 2017). That the Court allowed additional time to file a reply does not change the calculus, especially since Petitioner did not move to extend the deadline until more than twenty-one days after the response was filed.

declares that leave to amend 'shall be freely given when justice so requires'; this mandate is to be heeded. If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.' Of course, the grant or denial of an opportunity to amend is within the discretion of the District Court, but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules.

*Foman v. Davis*, 371 U.S. 178, 182 (1962) (citations omitted).

Petitioner simply claims that he "has recently discovered" Johnson's prior convictions without providing the details or explaining why the information was previously unobtainable if he had exercised due diligence. Dkt. 18 at 8 n.3. And, to substantiate his claim of the prior convictions, he merely provides a link to the website of the Hillsborough County Clerk of Court. *Id.*

Leave to amend is, in any event, unnecessary. As for allowing Petitioner to respond to prejudice, the form petition merely provides an opportunity for a petitioner to "state the specific facts that support your claim," not necessarily argue prejudice. *See* Dkt. 1; *Mayle*, 545 U.S. at 655 (noting that the petition must "specify all the grounds for relief available to the petitioner" and "state the facts supporting each ground"). Petitioner was free to argue prejudice in his reply, which

is precisely what he did. *E.g.*, Dkt. 18 at 8, 11. No further argument is necessary because the Court finds the lack of prejudice clear on the face of the petition and state court record.

Additionally, the proffered claim for failure to impeach Johnson has not been exhausted and is likely defaulted. *See Williams v. Crews*, No. 3:12CV224/LAC/EMT, 2013 WL 12156531, at *1-2 (N.D. Fla. June 5, 2013). This is so even if the claim relates back to the original petition. Petitioner sets forth no facts to establish cause or prejudice, and there is no indication that this satisfies the newly discovered evidence exception.

The underlying claim is moreover insubstantial because Johnson's credibility was nonetheless extensively attacked at trial. *See Aldrich v. Wainwright*, 777 F.2d 630, 637 (11th Cir. 1985) (no prejudice where petitioner fails to identify any specific information that would have added to the impeachment of state's witnesses where witnesses were exposed to substantial cross-examination); *Horton v. Mayle*, 408 F.3d 570, 576-77 (9th Cir. 2005) ("The jury knew that [the witness] had used [drugs], that he had a criminal history, and that he was an admitted liar. In short, [his] credibility was so undermined anyway that evidence that he also had a conviction . . . would not have affected the outcome."); *Davis v. Booker*, 589 F.3d 302, 309 (6th Cir. 2009) (finding "no reason to believe that . . . [a] conviction would have significantly impacted the jury's assessment of [the witness's]

testimony, much less its final verdict," where his credibility was impeached by the fact he was a drug dealer and made inconsistent statements to police).

First, Johnson admitted that she went with Burks to sell marijuana. Dkt. 20 Ex. 46 at 378. A pending charge and her probation status before a felony judge were addressed on both direct and cross. *Id.* at 374, 421, 423. She also admitted to being less than forthright with law enforcement about whether Burks had a gun. *Id.* at 368, 419, 457-58. Trial counsel also explored possible inconsistencies between her statements to law enforcement and her trial testimony. *Id.* at 453. This is not a substantial claim of ineffective assistance of counsel. Habeas relief, and leave to amend the petition, is unwarranted.[10]

## CERTIFICATE OF APPEALABILITY

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." Rule 11(a), Rules Governing Section 2254 Proceedings for the United States District Courts. The decision to issue a certificate of

---

[10] In his reply, Petitioner also complains that Respondent "failed to provide [Petitioner] an Appendix listing Exhibits or the exhibits." Dkt. 18 at 1. Yet Respondent's exhibit list is in fact included in its Notice of Filing Exhibits in Paper Form, Dkt. 19 at 3-6, and Petitioner does not claim he does not have access to the materials. And though Petitioner also observes that Respondent apparently did not include all relevant records, he concedes it "may not be necessary for the respondent to provide these, since the propositions for which they are cited are probably not disputed." Dkt. 18 at 1. The Court has nonetheless had an opportunity to review the supplemental records included in Petitioner's reply. They do not alter the Court's determination.

appealability requires "an overview of the claims in the habeas petition and a general assessment of their merits." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). A COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A petitioner "satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 336 (citation omitted).

The Court finds that Petitioner does not establish this requirement. The Court decides not to issue a certificate of appealability in the matter.

## CONCLUSION

The Court DENIES Petitioner's petition with prejudice. Dkt. 1. The Clerk is directed to enter judgment accordingly, terminate any pending motions, and close the file.

**DONE AND ORDERED** at Tampa, Florida, on June 12, 2019.


/s/ *William F. Jung*
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**


**COPIES FURNISHED TO:**
Counsel of Record
Petitioner, pro se